In the matter of CHARLES P. SWIGERT, Auditor of Public Accounts.

*Filed at Springfield March 27, 1886.*

1. EXEMPTION FROM TAXATION—*strict construction applied—power of taxation not to be bartered away.* The right of taxation being inherent, and essential to the very existence of government, can not be bartered away by the State, and even a partial disposition of the right is allowed by the courts with great reluctance, hesitation and caution.

2. All laws exempting property from taxation will be subjected to a strict construction by the courts when called upon to enforce them, and hence nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the State.

3. As all property is presumably subject to taxation, a claim of exemption as to a piece or class of property must be shown and established by clear and satisfactory proof.

4. SAME—*exemption of the Illinois Central Railroad Company—its extent and limit—whether it includes elevators to be used in the handling of grain.* Section 22 of the charter of the Illinois Central Railroad Company, after providing for a limited State tax upon its stock, property and assets, declared that "the said corporation is hereby exempted from all taxation of every kind, except as herein provided for:" *Held,* that this broad language should not be construed alone, but considered with reference to and in connection with the objects and purposes of the whole act. And as the company was authorized to acquire and use all such real and other property as might be necessary for the construction of its railway and stations, and such other accommodations as might be necessary to accomplish the objects of its incorporation, it was *held,* that the property intended to be exempted was such as that described, being such as was necessary for the construction and operation of its railway.

5. ·If an elevator of such company is used exclusively by it in receiving grain for shipment, or for storing it after shipment, without any additional charge therefor, except on neglect of the owner to take it away within a reasonable time after its arrival, it would be clearly exempt under section 22 of the charter of the company.

6. In this case it appeared the company erected on its right of way in Cairo, and near the Ohio river, a grain elevator, and leased the same to private parties, who received tolls and compensation for all grain stored therein. It was shown that such elevator was quite convenient and beneficial to the company in its business, but not more so than if built and owned by private persons: *Held*, that under the company's charter such elevator was not exempt from taxation, it not being devoted exclusively to the business of the company as a common carrier, and not being essential to the operation of its road.

7. EVIDENCE—*opinions of witnesses—as to the necessity of an elevator in the operating of a railroad.* On the question whether an elevator is necessary to the successful operation of a railway, the opinions of witnesses that it is, is not conclusive or entitled to a controlling influence; but the court will, from the facts proved, determine the true relations of the elevator to the road ·and its operation, rather than from the opinions of witnesses.

8. LAW AND FACT—*as to exemption from taxation—whether a question of law or fact.* What constitutes an exemption from taxation, is a question of law; but whether a particular piece of property is within the exception or not, depending upon the existence or non-existence of certain facts, presents a question of fact. But when the relations of the property, and the uses to which it is applied, are ascertained, it becomes a question of law whether it is exempt or not.

· 9. CONSTRUCTION OF STATUTES—*excluding matters not enumerated.* It is a well settled doctrine, that in construing statutes, particularly those requiring a strict construction, a general description, following a specific enumeration of objects or things, will be held to include only such things or objects as are of the same kind as those specifically enumerated.

·This is· an original proceeding, commenced in this court by Charles P. Swigert, Auditor of· Public Accounts, to have the decision and order of the county board of Alexander county, holding certain property of the Illinois Central Railroad Company not exempt from taxation under its charter, confirmed by this court.

Mr.· GEORGE HUNT, Attorney General, for the Auditor.

Messrs. Green & Gilbert, for the Illinois Central Railroad Company.

Mr. Justice Mulkey delivered the opinion of the Court:

The question for determination in this case is, whether a certain grain elevator belonging to the Illinois Central Railroad Company is exempt from taxation for other than State purposes. The elevator in question is built on the banks of the Ohio river, on a lot of ground belonging to the company, within the corporate limits of the city of Cairo, and is known as the "Cairo elevator." It is within about fifty feet of the main track of the company's road leading into the city, and is connected therewith by side-tracks. It is so constructed as to receive and discharge grain both by rail and river, though much the largest portion of its business is done by rail. It was completed by the company in the fall of 1881, and in about a year afterwards was let by the company to the Halliday Brothers, who have had exclusive control of it ever since. The rental or compensation which the company receives for the use of it, is regulated by the amount of business done,—that is, the company is paid by the lessees a specified sum for each bushel of grain received into it. Just what this sum is, does not appear from the evidence. The Halliday Brothers charge a cent and a half per bushel for the storage of grain, and permitting it to remain in the elevator for a period of ten days or less, and an additional half-cent per bushel for every additional ten days it remains therein. The building has a capacity of 750,000 bushels, and the grain is stored therein according to grade, and not according to ownership. It cost some $200,000 or $300,000.

Henry S. Halliday, one of the lessees, and Horace Tucker, general freight agent of the company, were both examined as witnesses on behalf of the appellant. These witnesses concur in the opinion that the Illinois Central Railroad Company could not do the amount and character of grain business

now done by it, without an elevator, and they therefore conclude, and so state in their testimony, that such an elevator is necessary to a successful and complete operation of the company's road in the transaction of its grain business. If the conclusion to be reached depended alone upon the opinions of witnesses, we should not hesitate to reverse the judgment of the county board for holding, as it did, the property was subject to local taxation. But, clearly, these opinions are not conclusive, nor can they have anything like a controlling influence in the decision of the question. What constitutes an exemption from taxation is a question of law, but whether a particular piece of property is within the exemption or not, depends upon the existence or non-existence of certain facts capable of proof, which, of course, is matter for the determination of a jury, or trying tribunal performing the functions of a jury, as was the case here. When the relations of the property to the road, and the uses to which it is applied, are ascertained, it then becomes a question of law whether it is exempt or not. In reviewing this case we must pass upon the facts as well as the law, and from the facts proved must determine the true relations of the property in question to the road and its operation, rather than from the opinions of witnesses.

The power to raise money by taxation is universally admitted to be inherent in every State or sovereignty, since, without it, the necessary means of defraying the expenses of government could not be provided, except in the case of mere despotisms. As this right of taxation, then, is inherent, and essential to the very existence of government itself, the principle is universally recognized by courts and political writers, that the State can not wholly barter it away or otherwise dispose of it. And even a partial disposition of it has been admitted by the courts with great hesitation and reluctance. (Cooley's Const. Lim. 281.) It is obvious that all laws exempting property from taxation are not only restrictions or limita-

tions on the taxing power, but they necessarily result in an unequal distribution of the burdens of government. The effect is not only to relieve the property exempted, from the payment of its due proportion of taxes, but that which it ought to pay, and would pay, under an equal and fair apportionment of them, must also be collected from the property not exempted. These considerations have very properly induced courts to adopt what is known as a strict construction, in giving effect to such laws,—hence nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the State. Presumably, all property is subject to taxation. When, therefore, it is claimed that a particular piece or class of property is exempt, the party interposing the claim must come prepared to establish it by clear and satisfactory proof. Thus it is said in the case of *The People* v. *Graceland Cemetery Co.* 86 Ill. 336: "The true spirit of our laws requires that all property should bear its just proportion of the burden of taxation, and where an exception is made in favor of a corporation, justice demands that it should show clearly a compliance with the terms and spirit of the act exempting it from taxation, before it can be permitted to escape a duty incumbent equally upon every citizen." The general principle here announced is also recognized in the following cases decided by this court: *First M. E. Church* v. *Chicago,* 26 Ill. 482; *Pace* v. *County Comrs. of Jefferson County,* 20 id. 644; *The People* v. *Western Seaman's Friend Society,* 87 id. 246; *Huck* v. *Chicago and Alton Railroad Co.* 86 id. 352.

In the present case, it is claimed that the elevator in question is exempt from taxation under the 22d section of the company's charter, which will be found in the private laws of 1851, page 72. That section, after exempting from taxation the lands granted to the company by the State, until they are sold, and also the "stock, property and effects of the company" for six years from the date of the act, directs that thereafter

"the stock, property and assets" belonging to the company shall be assessed and taxed, to a limited extent, for State purposes.     It then declares that "the said corporation is hereby exempted from all taxation of every kind, except as herein provided for."   It must be conceded, the language of this section is very broad, and if considered without reference to the objects and purposes of the act, it is clearly broad enough to include the property in question.   Indeed, if the provision is to be construed independently of this consideration, and is to be enforced according to its literal terms, it would include any kind of property whatever; and yet no one, we presume, would take so extreme a view as that.   It is very certain the learned counsel for the company do not.

It does not appear from the evidence, nor is it claimed, that the land upon which the elevator is built is a part of the original grant by the State to the company, and hence the exemption can not be placed upon that ground.   The company, however, is authorized, by the first section of its charter, "to purchase, hold and use all such real estate and other property as may be necessary for the construction of its railway and stations, and other accommodations as may be necessary to accomplish the objects of its incorporation;" and the contention of appellant, as we understand, is, that the property in question falls within the general description in the concluding part of the section,—namely, "other accommodations," etc.,—and that it is therefore exempt from taxation.   This conclusion is based upon the assumption that the exemption is coëxtensive with the right to acquire or hold property of any kind.   This position we do not regard as sound.   But conceding it is, for the purpose of the argument, it does not necessarily follow that the construction relied on is the correct one.   We can not believe it was intended, by the general description mentioned, to include objects of a different kind or class from those specifically mentioned in the preceding part of the section.   It is a well settled doctrine,

that in construing statutes, particularly those requiring a strict construction, as is the case here, a general description, like the one in question, following a specific enumeration of objects or things, will be held to include only such things or objects as are of the same kind as those specifically enumerated. Applying this principle to the section cited, as we must, so far as the question of exemption is concerned, we see nothing in it which strengthens the claim of the company. By it, the company is authorized "to purchase, hold and use all such real estate and other property as may be necessary for the construction of its railway and stations, and other accommodations," etc. Under the rule of construction in question, whatever is included in the expression, "other accommodations," must be of the same class or kind as "railway and stations." Without at all attempting to state the various articles or subjects of property that would clearly belong to the class of things specifically enumerated, we would say that it doubtless includes the road, with all necessary switches and turn-outs, together with all structures thereon; also, rolling stock, with all its machinery and appendages, warehouses and other structures, at the termini or along the line of the road, belonging to the company, and used by it exclusively for the reception of passengers, the storage of freight, and also for the purpose of keeping the road and rolling stock in repair, or of improving their general condition. This, of course, would include all necessary depot grounds and buildings, machine and work shops of all kinds, machinery, tools, and implements of every description used in keeping the road and rolling stock in repair and in a good and safe condition. All these things, it will be perceived, have an immediate connection with the improvement and operation of the road. Whatever would be necessary to increase its capacity, such as laying down an additional track or increasing the amount of rolling stock, would fall within the same category. But it is evident this elevator does not belong to any of the classes

of things enumerated. It has no direct connection with the road or its operation, yet when shipments of grain are made, either to or from it, over the company's road, it is very clear the company can handle the grain thus shipped, with more ease and greater facility, and hence can, by means of it, do a greater amount of business. But this is purely incidental, and falls far short of establishing the proposition that a vast elevator like this, costing $200,000 or $300,000, is a necessary appendage of a railroad, or that the legislature, in granting the company's charter, intended to exempt such a structure from taxation. It is clear the advantages accruing to the company, as shown by the evidence, do not at all result from its ownership of the property. Had the elevator been built and operated in the same manner it now is, by some one other than the company,—for instance, the Halliday Brothers,— the company, so far as facilitating its business as a common carrier is concerned, would derive the same benefit from it that it now does. As a mere carrier, the company has no right to put a bushel of grain in it, except when directed to do so by the shipper or consignee. This necessarily results from the fact that all grain, as is shown by the testimony, is stored in it according to grade, and not according to owner-ship. As to a railway warehouse, properly so called, the rule and usage is altogether different. On the arrival of a consignment of goods, the company has the right to at once store them in its own warehouse. The company is bound to carry grain in bulk, and deliver the same from cars or other convenient place of storage, without extra charge, now, just the same as it was before the elevator was built, if so required ; and the company has no right to mix one man's grain with others, unless permitted to do so by the owners.

It is clear, therefore, outside of the incidental benefits re-sulting to the company from a law of business, rather than from any municipal regulation, the elevator has no necessary connection with the construction, maintaining or operation

of the company's road,—and such being the case, it clearly does not come within the exemption. If the elevator was used exclusively by the company in receiving grain for shipment, or for storing it after shipment, without any additional charge therefor, except where the owner neglected to take it away within a reasonable time after its arrival, the property would then be clearly exempt from taxation. But such is not the case. Buildings used for the storage of grain for compensation, are indifferently called warehouses, granaries, and elevators. Vast amounts of capital are invested in them, and, like railroads and other *quasi* public property, are under legislative control. Their construction and operation constitute a distinct business in the State, of vast magnitude. They are a great convenience to the community in which they are situated, and particularly to the owners of the railways with which they are almost universally connected. Capitalists invest money in them for the same reason they do in other things—because they think it will pay. They are supported by contributions from dealers in grain, in the shape of tolls, which are always taken into account in buying and selling, hence the consumer in the end pays these expenses or contributions. So in this case, the building of the elevator was a mere investment by the company, and it is now regularly collecting tolls from those who use it, through the Halliday Brothers. These tolls, thus collected, are simply the returns of the company's investment. It is not reasonable to suppose the legislature intended that property representing so large an amount of capital should be exempt from local taxation, when the people at large are thus taxed for every benefit derived from it.

But this is not a new question in this court. We regard the case of *Illinois Central Railroad Co.* v. *Irvin*, 72 Ill. 452, as an authority directly in point against the claim of the company in this case. There it was claimed, that a transfer boat belonging to appellant, was, under the provisions of its

charter now under consideration, exempt from local taxation. The boat in question was used by the company in carrying passengers and freight between Cairo and Columbus, Kentucky, thus forming a connecting link between the Illinois Central and the Mobile and Ohio railroads. This court, in rejecting the claim of appellant in that case, and in giving a construction to appellant's charter, used the following language: "The taxes from the payment of which the legislature intended to relieve appellant, could have been only the taxes which, as a railroad corporation, it would be otherwise liable to pay upon its property acquired in the prosecution of its business in constructing and operating those lines of road." The elevator clearly does not fall within the exemption, according to the rule here laid down.

It is therefore considered that the decision of the county board of Alexander county be affirmed.

*Order affirmed.*