Bromwell, J.
This is an action brought by the plaintiff, alleging that it is a religious society duly incorporated under the laws of Ohio solely for religious purposes; that it is the owner of certain property at the southwest corner of Fourth and John streets in Cincinnati; that upon said property it has erected a house and buildings that are necessary for the proper occupancy, use and enjoyi ment as a place of public worship; that said premises are not leased or otherwise used with a view to profit, and the said house and buildings and the grounds attached thereto were, at the time complained of and still are, used exclusively for public worship, and that plaintiff has the right to own, hold, use and enjoy said premises and every part thereof, free from any and all taxation.
That defendant, Charles C. Richardson, was the auditor of Hamilton county; that said auditor placed said property upon the fax duplicate of said county in the name of the plaintiff for taxation in the years 1906 and 1907 without notice to the plaintiff, contrary to its rights and contrary to law, and delivered said duplicate to said treasurer for collection of taxes against the *215 plaintiff; that said treasurer placed said property on the forfeiture list and had offered the same for sale, and that defendant, Thomas W. Ryan, purchased said property at forfeiture sale and has received a deed from the auditor conveying, the same to him.
The said property was afterward placed on the tax duplicate in the year 1908 in the name of said Thomas W. Ryan, and that the said auditor delivered such duplicate to the said treasurer for collection of taxes against the plaintiff’s property so standing in the name of said Thomas W. Ryan, and that said treasurer is about to proceed to collect taxes thereon. .
Plaintiff prays for a temporary restraining order enjoining said auditor from placing said property on the tax duplicate for the year 1909; and enjoining the treasurer of said county from collecting taxes on the said property now on the tax duplicate, and upon final hearing for a perpetual injunction; that the action of said treasurer in' selling said property at forfeiture sale be set aside, the plaintiff’s title be quieted as to all claims of defendant, Ryan, and that said Ryan be forever barred from having or claiming any of the rights in said premises, and for such other and further relief as seems reasonable and equitable.
To this petition the defendants, Richardson and Roth, auditor and treasurer respectively, of Hamilton county, Ohio, have filed their answer, admitting that the plaintiff is a religious .society incorporated under the laws of Ohio solely for religious purposes ; that it is the owner of the premises described in the petition ; also all the allegations in the petition concerning the erection of a house and buildings upon said premises, and that said house and buildings are necessary to the proper occupancy, use and enjoyment of said premises as a place of public worship; that the said house and buildings and the ground attached thereto were, at the time of the acts complained of in the petition, and still’ are, used exclusively for public worship; they also admit that said property was placed by said auditor upon the tax duplicate of said county, and that said duplicate was delivered to the said treasurer as alleged; that said treasurer placed said property on the forfeiture list, had the same offered for sale and struck it off to the said Ryan, to whom a deed there *216 for was afterwards delivered by said auditor; that said property was afterward put on the tax duplicate of 1908 in the name of Thomas W. Ryan, and that the said auditor delivered said duplicate to the treasurer of said county for the collection of taxes against plaintiff’s said property so standing in the name of the said Ryan on the tax duplicate of 1908, and that said treasurer is about to proceed to collect taxes thereon.
Defendants further say that the plaintiff does not occupy the premises described in the petition; but that during the years 1906, 1907 and 1908, for which said property was put upon the tax duplicate as described in the petition, and at the present time the plaintiff leased and does still lease to the Christian Catholic Apostolic Church, which, during the time mentioned in the petition did and does now occupy said premises under a tenancy from month to month, and during all of said periods had paid and still does pay to the plaintiff a monthly rental of seventy dollars ($70), which plaintiff during all of said periods has received and still does receive for the rental of said premises; and that, therefore, said premises are leased or used by plaintiff, and during all of said tax periods were leased or used with a view to profit, and defendants pray for a dissolution of the temporary injunction and dismissal of the plaintiff’s appeal and for all other and further relief in the premises.
Simply stated, the sole question submitted to the court is practically this:
“Is property, owned by one church, leased for a substantial rental to another church, and used exclusively by the latter for church purposes, exempt from taxation under Ohio law ? ’ ’
This is a question which is absolutely novel in Ohio, and which after a careful examination of the statutes and decisions in other states, seems to be presented for the first time, as I have found nothing in the text-books, nor in the decided cases which help to answer it.
Article XII, Section 2 of the Constitution of Ohio, provides:
“Laws shall be passed taxing by uniform rule * # * all real * * * property according to its true value in money, *217 * * * but * * *' houses used exclusively for public worship * * * may by general laws be exempt from taxation. ”
Acting under the authority of this section of the Constitution, the Legislature passes Section 2732 of the Revised Statutes, reading as follows:
'' The following property shall be exempt from taxation; first, * * * houses used exclusively for public worship, the books and furniture therein and grounds attached to such buildings necesasry for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit. ’ ’
The difficulty in the present case is in construing the section of the statute just cited, and there are three distinct classes of cases in which the same question of what is meant by exempting buildings used exclusively for religious purposes, namely:
1st. Where the owner of the property is a church, but the tenant is not one of the exempted classes.
2d. Where the owner is not one of the exempted classes, but the tenant is a church, and
3d. Where one church is the owner and another church the tenant of the property.
Numerous cases have been decided upon the first and second of these classes, but none directly upon the third class so far as I have been able to discover.
In construing statutes which relate to exemptions from taxation, the almost universal rule is one of two constructions. A few examples will illustrate:
Stahl v. Association, 54 Kas., 542:
Syl. 1. “Any person or corporation claiming immunity from the common burdens of taxation which should rest equally upon all, must bring himself or itself clearly within the exemption; and hence, a provision creating an exemption from taxation must be construed strictly. ’ ’
United Brethren v. Commissioners, 115 N. C., 497:
‘£ The general rule is liability to taxation, and that all property shall contribute its share to the support of the government which protects it. ’ ’
*218 In re Swigert, 119 Ill., 83:
Syl. 2. “All laws exempting property from taxation will be subjected to a direct construction by the courts when called upon to enforce them and hence, nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the state.” Syl. 3. “As all property is presumably subject to taxation, a claim for exemption as to a piece or class of property must be shown by clear and satisfactory proof. ’ ’
Redemptorist Fathers v. Boston, 129 Mass., 178, page 180:
“It is in no case to be assumed that the law intends to release any particular property from this obligation; and no such exemption can be allowed, except upon clear and unequivocal proof that such release is required by the terms of the statute. If any doubt arises as to the exemption claimed, it must operate most strongly against the party claiming the exemption.”
The Cincinnati College v. the State, 19 O., 115:
“All exemptions from taxation should be strictly construed.”
Cincinnati v. Lewis, Auditor, 66 O. S., 57:
“If this- conclusion were doubtful, it would, nevertheless, be required by the established rule that all exemptions from taxation are to be strictly construed. ’ ’
Mundy v. Van Hoose, 104 Ga., 297:
“Exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed. ’ ’
Exeter Academy v. Exeter, 58 N. H., 307:
“It will never be assumed that the government intended to release any part of the property entitled to its protection from the burden incident to such protection, and it is the duty of those who assert that claim to show it in language which can admit of no other conclusion; and where doubt arises as to the meaning *219 of the language used which it is claimed confers exemption, it will be construed most strongly against those who maintain the exemption. ’ ’
Yale University v. New Haven, 71 Conn., 329 :
“The Legislature ordinarily intends its laws to apply to all equally; it does not intend to grant privileges to select individuals. So when exceptions or special privileges are claimed under a statute, this ordinary or presumptive intention in entitled to weight according to the circumstances, in ascertaining the actual intention expressed by the language used. ’1
Hoge v. Railroad, 99 U. S., 348-354:
Syl. 1. “The power of a Legislature of a state to exempt particular parcels of property of individuals or of corporations from taxation * * * has been asserted in several cases by this court. ’ ’
Syl. 2. “But though this power is recognized, it is accompanied with the qualification that the intention of the Legislature to grant immunity, must be clear beyond a reasonable doubt. ’ ’
Syl. 3. “It can not be inferred from uncertain phrases or ambiguous terms. * * * If a doubt arises as to the intent of the Legislature, it must be solved in favor of the state. ’ ’
The most recent eases decided by our Supreme Court in which this question of construction has been announced is that of Watterson v. Halliday, 77 O. S., 150, at p. 169:
“While we do not apply strict rules of construction in eases where religious, charitable and educational institutions seek exemptions, we think such right to exemption should appear in the language of the Constitution or statute with reasonable certainty, and not depend on their doubtful construction. ’ ’
Page 171:
“It is manifest, from the carefully worded language of these provisions (referring to the exemption clause of the statute), that the Legislature intended to place strict limitations upon exemptions, and great caution has been exercised in the terms expressed, so that the right of exemption conferred would' not be abused or unduly enlarged, and such restrictions are essential to a fair and equitable sharing in the burdens of taxation.”
*220 I think that a well drawn distinction may be made between the exemptions claimed of property used for religious, educational and benevolent purposes exclusively and that used by individuals or corporations for other purposes, and that while the Legislature is held to a strict accountability that it shall not exempt property from its burden of taxation, except as authorized by the Constitution of the state, courts in construing such legislation should, in the language of one of the cases above cited and of numerous others not referred to above, endeavor to ascertain the intention of the Legislature in granting exemptions within the constitutional authority vested in it; and that not a severe or absolutely strict rule of construction should be applied as to such exemption of religious, charitable and educational institutions as to other objects, and that the policy and spirit of the law should be considered by the court in determining in any particular instance whether the Legislature intended such exemption.
It will be noted that there are two particularly important words in the clause exempting church property; these are the words “used” and “exclusively.” The mere fact that a church owns property, whether it derives an income from it or not, does not create the exemption. It must first of all be used; secondly, it must be used exclusively. The mere fact of ownership alone without these other requisites referred to, give no claim to exemption, nor does it make any difference whether the income of the property is applied to religious purposes or otherwise, where the church has leased a portion of its property for secular purposes. This fact is sustained by numerous cases in all the states which have statutes similar to our own; thus,
Benevolent Society v. Kelly, 28 Oregon, 173:
Syl. 2. “Under this section the test of the exemption is the use of the property itself, and not the application of the income derived from it. ”
Stahl v. The Association, 54 Kas., 542:
Syl. 2. “A dwelilng-house owned by the association, which was devised to it for the exclusive purpose of education is not *221 exempt from taxation, under the provisions of the charter of the association, if not used exclusively for religious or educational purposes, although the house is rented to a tenant who pays rent therefore and such rent is appropriated by the association exclusively for the purpose of education.”
Page 549:
“When its real estate is rented to a tenant, or its funds invested in other property for profit, or loaned at interest, the property thus rented or invested or loaned, will be liable to taxation, as much as any other property that is rented or invested or loaned no matter in whose hands it might be.” (Citing Cincinnati College v. State, 19 O., 110).
Vail v. Beach, 10 Kas., 214:
Syl. “A dwelling-house in Lawrence owned by the diocese of the Episcopal Church and used by the Bishop exclusively as a residence is not exempt from taxation. ’ ’
Page 216:
“ It is only property that is used exclusively for religious and other designated purposes that is exempt. In this case the property is used as any other dwelling, and the use is not distinguishable from that of the residence of any other Christian pastor or Christian gentleman.”
Methodist Episcopal Church v. Chicago, 26 Ill., 482, at page 487;
“The meaning of this law is, as applied to religious buildings and furniture, that they must be used directly for sacred and not for secular purposes. It is not enough that the profits and income of the secular uses are to be applied to sacred purposes. When money is made by the use of the building, that is profit, no matter to what purpose that money is applied. ’ ’
Mulroy v. Churchmen et al, 60 Iowa, 717:
Syl. ‘ ‘ Where the title to forty acres of land was held in trust for a religious body, but the land was not used for religious purposes, except that about one-half acre in a corner was used as a burying ground, held, that only one-half acre so used was exempt from taxation.”
Gerke v. Purcell, 25 O. S., 249:
“For the purposes of taxation there is a marked distinction between the property appropriated for the support of public wor *222 ship and that which is appropriated as a place of public worship. The exemptions authorized are not of such houses as may be used for the support of public worship, but of houses used exclusively as places of public worship.
“Nor does it seem to us -that the question as to whether parsonages are taxable or not depends upon their proximity to the church edifice. On the contrary that question, in our opinion, is to be determined by the direct and immediate use to which they are .applied. ’ ’
Chapel of Good Shepherd v. Boston, 120 Mass., 212, at page 214:
“But the rooms let by the plaintiff to tenants, receiving the usual rate of rent, were clearly not occupied by the corporation- or its officers for religious purposes, within the meaning of the tax act. ” (Rooms in the building belonging to the plaintiff were rented out to lodgers at a nominal rent.)
Watterson v. Halliday, 77 O. S., 150, at page 173:
‘ ‘ The exemption is not of such houses as may be used for the support of public worship, but of houses used exclusively as places of public worship. ”
In a few of the decided cases in states having statutes practically the same as our own, the fact that it is the use of the'premises without reference to the ownership that creates the exemption is clearly and positively announced.
St. Mary’s College v. Crowell, 10 Kas., 442, at page 449:
“It is solely the use of the property which determines whether the property is exempt or not.1 ’
Washburn College v. Commissioners of Shawnee County, 8 Kas., 344:.
“It makes no difference who owns the property nor who uses it. Property used exclusively for educational purposes whoever may own it or whoever may use it is exempt. Property not used exclusively for educational purposes (if otherwise taxable), is not exempt, whoever may own it or whoever may use it. And this must be direct and immediate and not indirect or removed. ’ ’
Cemetery Assn v. Assessors, 37 La. An., 32, at page 36 (under a provision of the constitution of Louisana exempting 1 ‘ all places of burial”) — Eeld:
*223 “The law concerns itself exclusively with the quality and use of the property and not at all with its ownership or disposition. So long as it retains the character of a ‘place of burial,’ it matters not who owns it, how often it may change hands nor at what prices — as a ‘place of burial,’ it remains exempt.”
Academy v. Irey, 51 Neb., 751, at 757:
“It is the exclusive use of the property which determines its exempt character. If it is devoted exclusively to educational purposes, it is not liable to taxation, unless such use is not direct but remote. ’ ’
Academy v. Bohler, 80 Ga., 164:
“When the tax officer goes forth to search for taxable property, all which he finds employed in the ordinary uses of common life, unless it belongs to the public, he is to regard as taxable. When exemption is claimed he is not to look for persons,.natural or artificial, nor for ideal beings, but for real visible things, for places of religious worship, etc. ” * * *
Cincinnati College v. the State, 19 O., 115:
“As we have before intimated, the law applies to property as it -finds it in use and not to what may be done with its accumulations in future. ’ ’
Mundy v. Van Hoose, 104 Ga., 297, at p. 300 :
‘ ‘ The mere fact that this or that property is a place of religious worship * * * is not sufficient to establish the exemption allowed by law, but it must also appear that such property is not' used for purposes of private or corporate profit or income; nor is it incumbent Upon the tax officer to take accounts with the person or persons in charge of said property to ascertain whether the income exceeds the expenditures made by such person or persons in connection with such property. If it appear that the property is used for purposes of private or .corporate income, the exemption does not attach. As we have seen it is the use made of the property and not the use made of the income, from which its taxability or non-taxability must be determined. ’ ’
Exeter Academy v. Exeter, 58 N. H., 308:
“The fact that the Legislature ignored ownership and made use the test, shows unmistakably that they recognized the essen *224 tial distinction between the two and fixed tbe latter, in preference to the former, as the basis of exemption. * * * The law applies to the property as it finds it in use, and not to what may be done with its accumulations.” (Citing Cincinnati College v. the State, 19 O., 110.)
Y. M. C. A. v. Mayor, 44 Hun., 106:
“It was not intended that certain sections of the statutes, providing that the exemption from taxation of buildings used for the purposes therein specified should not apply to any building or premises in the city of New York, unless the same shall be exclusively used for such purposes, and exclusively the property of a religious society, but it was intended thereby to give the exemption to such building or premises as should be exclusively devoted to one or the other of the purposes therein specified, whether the properly was owned by a religious corporation or not.”
Practically all of the above authorities and decisions apply to a ease where the church is the owner of the property, and the tenant does not belong to the exempted classes.
The decisions are not so numerous in the second class of cases where the owner is not among the exempted classes and the occupant of the property is, and the decisions are difficult to reconcile and are frequently directly in conflict. "While not involved in this particular case at bar, I feel justified in referring to several of them.
State v. Bell, 45 N. W. Rep., 615:
Syl. 1. “The mere use and occupancy of premises for educational purposes by a school or seminary under a lease from the owner thereof, do not entitle him to claim the benefit of the statutory exemption from taxation. ’ ’
Syl. 2. “The exemption allowed by the statute relates only to such property as the society, corporation or trustees of such institutions of learning would be bound to pay taxes on as owner, but for such exemptions. ’ ’
Black v. the City of Brooklyn, 51 Hun., 581:
Syl. 1. “A church edifice erected and used for the purposes of religious worship and subsequently sold under a judgment of foreclosure to a party, who for a time during which certain taxes *225 were levied 'upon the property, allows it to be used for' public worship, is not entitled to exemption from such taxes, nor can the purchaser' maintain an action to have such taxes declared void. ’ ’
Syl. 2. ‘1 The law was intended to benefit church societies and incorporations; and as no religious society can be benefited by the exemption from taxation of the property in the hands of a private individual, he can not maintain an action to have the taxes declared void. ’ ’
Page 582:
“The plaintiff’s claim for exemption for this property is based upon the statute which exempts from taxation ‘every building * # # for public worship.’ * * # The statute quoted was not made for this plaintiff. If he can successfully invokle its provisions to secure immunity from taxation for the property in question, then any private property hired out and used for educational or religious purposes will escape taxation for the same reason. Such never could have been the intention of the Legislature, and the statute 'is not fairly susceptible of such interpretation. The law was intended to benefit church societies and incorporations, and seminaries of learning.”
People, ex rel Rorke, v. Assessors, 32 Hun., 457:
Syl. ‘ ‘ The relators being the owners of a house and lot in the City -of Brooklyn, leased the same to the Board of Education of the said city to be, and the same was- used as a public school. Held, that the words “school house” refers only to such buildings, with the sites upon which they are situated, as the district. would have been compelled to pay a tax upon as owner, had it not been for the exemption created by the statute.
Page 459:
‘ ‘ The owner of land is liable to taxation. If he leases it for a public school it is not a school house within the meaning of our school laws. The lessees claim no exemption and they use the building as a school. The lessor is liable as owner, the use of it by the lessee did not create an exemption in his favor * * * The B-oard of Education hire a building and pay the value of its use and occupation. The owner would get from the treasurer by exemption the tax in addition to the value of the premises. ’ ’
The Church of the Epiphany v. Raine, 21 O. L. B., page 181. Judge Shroder said;
*226 “The plain and ordinary meaning of the phrase, ‘houses used exclusively for public worship ’ can not be otherwise, expressed than it is in the statute — it means houses that are so used. Is there any inference to be drawn by the context of this statute, that it was intended thereby to make a further condition; that it must be owned as well as used ? Now an examination of this Section 2732 will disclose that in its discretion the Legislature classifies property in three heads: property exempt by reason of its user; property exempt by reason of its ownership; property exempt because it is used by its owner. ’ ’'
Howell v. Philadelphia, 8 Phila., 280:
Syl. “Property leased by a religious congregation for purposes of stated religious worship, is by act of April 16, 1838, exempt from taxation. ’ ’
The act referred to is given on page 281 as follows:
■ “ ‘All churches, meeting houses, or other regular places of stated religious worship * * * of burying grounds belonging tó any religious congregation * * * be and the same are hereby exempted from all and every county, road, city, burrough, poor or school tax. ’
“It may be assumed that the object of the act was to -aid and encourage religious worship. It embraces the well known and recognized classes — churches and meeting houses; and then, that all may be included the ancient and-modern, the established and those that may be established, are embraced in the general clause. * * * The plain, obvious and natural reading of the act would seem to include all places consecrated to regular, stated religious worship, without exception of any kind. But it is said that ‘private property’ rented to a congregation for religious purposes is not within the spirit and meaning of the act, although it fulfill all the requirements of the language of the act. In other words, a congregation can not claim any benefit from the act, it must own the building. I can not thus view its spirit and meaning. 'It is not in the words, nor can it be extracted from them by any known rules of interpretation. ’ ’
The two cases which follow -approach nearest to the case-at bar, the statute in each case being practically identical with that in this state. The first is that cited by plaintiff in its brief and relied upon by it as decisive of the question, namely:
*227 Scott v. Society Russian Israelites, 59 Neb., 571:
Syl. ‘ ‘ Property used directly, immediately and exclusively for religious purposes is exempt from taxation, without regard to the question of absolute ownership.”
Page 573, Section 2, Article I, Chap. 77, Complied Statutes of Nebraska declares:
‘ ‘ The following property shall be exempt from taxation in this state. * * * Second, such other property as may be used exclusively for * * * religious purposes * * *.
“The language of the provisions quoted is plain. There is exempted from taxation all property used exclusively for religious purposes. It is the exclusive use for the purposes named which determines whether the property is subject to the burden of taxation or not. * * * To hold that a religious society must be the absolute owner of the property occupied or used by it exclusively for church purposes to create the exemption would be to inject words into the constitution and statutes which are not therein written. This we have no power to do. ’ ’
In the case last cited the tax was assessed against the lessee of the premises and not against the owner or lessor.
The only remaining case to which I shall call attention is that of The Sisters of Charity v. Detroit, 9 Mich., 94. In this case there was a divided court two holding that the property in controversy was exempt from taxes and two that it was not. The facts' are more similar to those in the present case than in any other decided case to which my attention has been called.
Syl. 1. “The statutes exempt from taxation ‘such real estate belonging to’ library, benevolent, charitable and scientific institutions, ‘as shall actually be occupied by them for the purposes for which they Avere incorporated.’ Certain real estate was deeded to a church in fee, ‘to the end that they might, from time to time, as they should deem necessary, erect thereupon any buildings, or improvements suitable for ecclesiastical, literary or benevolent purposes, ’ and was leased to the Sisters of Charity for thirty years, at a nominal rent, for charitable purposes, and was actually occupied for such purposes. Whether the premises, Avhile held and occupied under this lease, are exempt from taxation under the statute as ‘real estate belonging to the Sisters of Charity, Quere?’ ”
*228 The facts in this case are as follows :
The Church of St. Ann, owners of the real estate involved, leased it to the Bishop of Detroit by a perpetual lease; the latter’s successor leased the same land to the Sisters of Charity for thirty years, the latter to pay all taxes and a nominal rent. The Church of St. Ann was a religious organization and the Sisters of Charity were engaged in assisting persons, and especially children and orphans suffering from disease, necessity or infirmity. The church accepted the lease of the premises with the condition that they were to be used ‘ ‘ for the purpose of keeping and maintaining thereon during said term of thirty years an orphan asylum and gratuitous school for poor and destitute children.”
The court divided equally on whether the property was exempt. Chief Justice Martin favoring the exemption, said at page 95:
“Were the property which is the subject of this assessment actually occupied by the corporation of St. Ann’s Church, as it is now occupied by these complainants, it would I think, be most clearly exempt from taxation. ’ ’
'Page 97: '
“The statute must not be read without a recognition of the fact that the land having an owner of the fee, may be possessed by one having an interest less than the fee, which is dominated ‘real estate.’ . The ‘real estate’ is exempted; and this exemption, although attached to the land, is a personal privilege; for we can not conceive of exemption except as a personal benefit, or a subject of exemption without ownership. # * * The benefit is not bestowed upon the land, but upon persons; the land or real estate therein, being the subject, the person the object.”
Page 98:
“Now the policy of this exemption act is too evident to require discussion. It was to relieve these incorporations from the burden of taxation on property used for the purpose of their organization, but not such as might be occupied for other purposes. ’ ’
Page 99:
“Now had the corporation of St. Ann’s Church actually or by its servants and employes occupied this property for the purpose of keeping and maintaining thereon an orphan asylum and gratuitous school for poor and destitute children, it would be exempt *229 * * How is the case changed by the fact that the Sisters'of Charity occupy it for such benevolent purposes, the property having been from the first designated to such or the like uses? * * * Had the church employed them as servants or agents to conduct this benevolent enterprise, the property would not have been assessable; and can it be held, upon equitable or legal principle, that because a gratuitous lease was given by the church, instead of gratuitous service offered by the sisters, the benefit of the exemption is taken from the proprty ? * * * If we hold the property subject to taxation under the facts of this case, we insist upon the severest construction of language, in opposition, as I think, to the true meaning of the letter, and to the equity and spirit of the law. ’ ’
Judge Campbell takes the opposite view on page 101:
“By the terms of the law all property not expressly exempted therefrom is subject to taxaton. And any exemption claimed must come plainly within the meaning of the statute. ’ ’
Page 102:
‘! No one ever imagined that a tax sale could be made of a mere leasehold, or that it could be taxed as real estate. This tax is on the land, and includes the whole estate. It is very clear that this does not belong to the complainants. And the statute can not be made by any construction, to exempt what does not belong to them, and furnishes no means of reaching any such case. The fact that the lessees pay but a nominal rent beyond taxes can make no difference, for the statute does not exempt property on any such ground, and the case of complainants would be the same if they paid rent. ’ ’
Let us suppose a case that instead of leasing this property to a congregation differing from the lessor with the lessee, the plaintiff in this case should after moving out of its former church property, have established therein a mission of its own denomination, and the building had continued to be used by this mission exclusively for religious purposes, and let us suppose further that the collections or' contributions taken up in said mission were transmitted to and became the property of the parent church; in a word, these contributions would be a source of income to the latter, but can there be any doubt in such a case that the property so used by the mission would be exempt? How then can any *230 different rule apply where the denomination lessor and lessee differ ? The edifice is used exclusively for church purposes. The fact that its owner happens to be a church gives no occasion to enlarge the statute or read into it anything that the Legislature did not see proper to incorporate. If it had been intended that the exemption should apply only in cases where the church is not only used exclusively for church purposes, but that the owner, should itself be the church occupant, the Legislature, by appropriate language could have so enacted. The language of the act is clear, and following the numerous decisions which have held that it is the use and not the ownership, nor the manner in which the income is disposed of that forms the ground of the exemption, I find for the plaintiff and allow the injunction prayed for.