## THE ROSEHILL CEMETERY COMPANY

### v.

### CHARLES KERN, Collector.

*Filed at Ottawa October 26, 1893.*

1. TAXES—*on exempted property, enjoined.* It is well settled in this State that the collection of a tax levied upon property not subject to taxation will, on application of the owner, be enjoined. He has the right to assume that the exemption will be respected, and is not required to take notice of its illegal assessment and valuation, nor to appear before the local tribunals in that regard.

2. SAME—*exemption—burden of proof.* Where property is claimed to be exempt from taxation because of the use to which it is applied, the burden is upon the claimant to satisfactorily show that it is appropriated to the use specified in the law under which the exemption is claimed.

3. SAME—*exemption of land used for burial purposes.* Under the special charter of a cemetery company, which provides that "all estate, real and personal, held by the company, actually used by the corporation for burial purposes, or for the general use of lot holders, or subservient to burial uses, and which shall have been platted and recorded as cemetery grounds, shall be" exempt from taxation, the mere purchase of land for future use as burial grounds, and platting it, will not make it subservient to burial purposes, within the meaning of the charter, so as to exempt the same from taxation. The subserviency is not merely to cemetery uses or for general purposes of the company, but to "burial uses."

4. The word "subservient," as used in the charter, may be properly construed to mean grounds not for actual burial purposes, viz., in which to deposit bodies, but useful in connection with such grounds, "serving to promote the end of burying the dead."

5. The court does not wish to be understood as holding that cemetery grounds are only exempt, under such a charter, when burials have been actually made upon them, or that the necessities of the corporation may not be reasonably anticipated by appropriating grounds to burial purposes before they are absolutely demanded, so as to bring them within the exemption.

6. This appropriation may be done by the company when it "makes up" sections, or, otherwise acting reasonably in good faith, actually devotes its grounds, as a body, to immediate use for burials. But it

can not, by platting a large body of land and appropriating a fraction of it to actual burial purposes, escape taxation of the whole.

7. Same—*presumption against exemptions.* The intention of the State to bind itself by an exemption of property from taxation, must be clear, as all presumptions are against it.

Appeal from the Superior Court of Cook county; the Hon. Philip Stein, Judge, presiding.

Messrs. Parker & Higgins, for the appellant:

The general policy of the State, and its law, (Hurd's Stat. 1891, chap. 120, secs. 2, 3, p. 1144,) are, that cemetery grounds shall be exempt from taxation. And this is in accordance with public policy and with the laws of all the States. *Buffalo Cemetery* v. *Buffalo,* 46 N. Y. 506.

The exemption provided for in the charter (sec. 5) grants an exemption, like the exemption in the general law. Stat. 1855; Gross' Compiled Laws, 1871, p. 124, sec. 8; Starr & Curtis' Ann. Stat. p. 2027, secs. 2, 3.

Where a cemetery company, having an unimproved tract of land within its common inclosure, together with lands actually improved, platted, recorded, and used for the interment of bodies, in the course of its growth deems, by its proper officers, that said tract be improved and used for the actual burial of bodies as fast as required, and plats and records said tract as cemetery grounds, and makes improvements, and actually buries bodies on part of said tract next contiguous to the part of the cemetery actually used for burials, said tract is properly exempt from taxation, as lands subservient to burial uses, and grounds for the burial of the dead, and as a graveyard. *Cook* v. *State,* 33 N. J. L. 474; *Commissioners* v. *Gaffney,* 34 id. 130; *Hoboken* v. *Bergen,* 43 id. 146; *Hospital* v. *Somerville,* 101 Mass. 319; *Seminary* v. *People,* 106 Ill. 398.

The mere fact that part of the lands are temporarily used for other purposes, and not actually for the immediate interment of bodies, does not necessarily deprive the tract, or even

the portions so used, of the quality and condition of subservi-ency intended, within the meaning of the charter. *State* v. *Newark*, 2 Dutch. 519; *Hoboken* v. *Bergen, supra; Montgomery* v. *Wyman*, 130 Ill. 26; *Trustees* v. *Wilbraham*, 99 Mass. 599.

In determining what real estate is necessary for the pur-poses of such institutions, it is not limited to what would appear to the court to be necessary, but it will apply to all real estate occupied by it or its officers, and intended for and appropriated to the purposes of the institution by its officers, in the absence of anything to show an abuse of the discretion vested in them as its officers. Burroughs on Taxation, sec. 71, p. 135; *Hospital* v. *Somerville*, 101 Mass. 319.

It is not necessary that the land be actually occupied by dead bodies, to exempt it. The true test is, "is the land set apart as cemetery grounds for the burial of the dead, and is it probable that it will be required for that use in a reasonable time." *State* v. *Gaffney*, 34 N. J. L. 131; *Appeal Tax* v. *St. Peter's Academy*, 50 Md. 352; *Cemetery Co.* v. *Swanson*, 14 R. I. 199; *Trustees* v. *Wilbraham*, 99 Mass. 599; *Seminary* v. *People*, 106 Ill. 398; *State* v. *Newark*, 2 Dutch. 599; *Cook* v. *State*, 33 N. J. L. 474.

The land occupied by the houses, greenhouse and the little lake is exempt. 101 Mass. 319; 56 Md.; 31 N. J. L. 131; 14 R. I. 199.

A court of equity has jurisdiction to enjoin the collection of a tax on real estate, when the land is not subject to taxa-tion. *Railway Co.* v. *Hodges*, 113 Ill. 323; *Allwood* v. *Cowen*, 111 id. 481; 115 id. 353; *Phœnix Exchange* v. *Gleason*, 121 id. 528; *Lawrence* v. *Traver*, 136 id. 474; *School Directors* v. *School Directors*, 135 id. 464.

While it is true that, as a general rule, exemptions and grants are strictly construed in favor of the State, neverthe-less the strictness must be within the reasonable limits of construction, as applicable to the nature, public or semi-public character, needs and requirements of the person or

corporation in whose favor the exemption is granted. *Society* v. *Boston,* 142 Mass. 24; *University* v. *People,* 99 U. S. 309; *Cemetery* v. *Buffalo,* 46 N. Y. 506; *Orr* v. *Baker,* 4 Ind. 86.

Mr. JAMES MAHER, for the appellee:

All tax exemption statutes must be strictly construed, to the end that public burdens may be equalized. Hill on Taxation, 74, 75; *Montgomery* v. *Wyman,* 130 Ill. 17.

This case is like *People ex rel.* v. *Graceland Cemetery Co.* 86 Ill. 336, and is governed by it.

It never was the intention of the legislature to permit exemptions in cases like this. *Montgomery* v. *Wyman, supra; Northwestern University* v. *People,* 80 Ill. 333; *M. E. Church* v. *Chicago,* 26 id. 482; *Pace* v. *Commissioners,* 20 id. 645.

This it not a case for equity jurisdiction. *Felsenthal* v. *Johnson,* 104 Ill. 21; *Preston* v. *Johnson,* id. 625; *Camp* v. *Simpson,* 118 id. 224; *Montgomery* v. *Wyman,* 130 id. 26.

In cases claiming exemption from taxation, the claimant must use every effort to obtain his remedy at law, before applying for relief to a court of chancery. *Camp* v. *Simpson,* 118 Ill. 224; *Railroad Co.* v. *People,* 119 id. 140; *People ex rel.* v. *Chicago,* 124 id. 637; Hilliard on Injunctions, (2d ed.) 462, *et seq.; Swinney* v. *Beard,* 71 Ill. 27; *Cook County* v. *Railroad Co.* 35 id. 466.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a bill by the Rosehill Cemetery Company, to enjoin the collection of a general tax levied on the west half of the south-west quarter of section 6, township 4, north, range 14, east, in Cook county. The theory of the bill is, that the property is exempt from taxation.

All parties agree that the company is an existing corporation, organized under a special charter, granted by the legislature of this State in 1859. (Private Laws of 1859, p. 29.) Section 5 of the charter provides: "All lots sold for burial

purposes by said cemetery company, when conveyed by the corporation to individual proprietors, shall be indivisible, but may be held and owned in undivided shares, and shall be free from taxation and from execution and attachment: *Provided,* that no one person shall hold, at one time, more than four lots so exempted; and all estate, real or personal, held by the company, actually used by the corporation for burial purposes, or for the general use of lot holders, or subservient to burial uses, and which shall have been platted and recorded as cemetery grounds, shall be likewise exempt as above."

The company acquired, in 1873, the land in question for the purpose of some time using it for cemetery purposes, as a part of its burial grounds, it being contiguous to other lands owned by it, in actual use for such purpose. It is conceded by the bill that it remained subject to taxation up to the year 1890, the tax being paid by the company for each preceding year. It is alleged in the bill "that it became necessary to devote said eighty acres to burial purposes, and on April 28, 1890, the company resolved that the lands be platted for burial purposes, and for the general use of lot owners, and subservient to burial purposes. The plat was duly made, approved, and on April 30, 1890, filed for record. Book 41, pages 13 and 14. Said plaintiff, since the plat was made, has sold, in said lands, burial lots, and is continuously selling lots, and ever since said plat was made the lands have been actually used for burial purposes, save a small lake and little spaces at intersection of open ways, and such portions are held for the general uses of the lot holders and purchasers of burial lots, mainly for ornamental purposes, subservient to burial purposes, and platted and recorded as such. The space marked 'dwelling house' is, and has been ever since the making of said plat, used by the employes of the plaintiff, who are at work in its grounds, and subservient to burial uses. The space marked 'greenhouse' is used by the company in connection with the cemetery, and is also subservient to burial purposes."

This last allegation is denied by the answer, and the real issue in the case is thus formed, viz., was this eighty-acre tract, or any part of it, so platted and used by the corporation for burial purposes as to exempt it from general taxation for the year 1891, under the provisions of section 5, *supra*. The finding of the court below upon this issue is as follows:

"The court finds that the board of managers of said company, on the 28th day of April, A. D. 1890, resolved that said lands be surveyed and platted into lots for burial purposes, and for the general use of the lot holders. On said day said lands were platted into burial lots and grounds, for the general use of lot holders. Said plat was duly acknowledged as required by law, and was on April 29, 1890, approved by H. J. Jones, examiner of subdivisions, Cook county, Illinois, and the said plat was, by the board of managers of the plaintiff, ordered to be placed on record in the recorder's office of said county of Cook, and it was on April 30, 1890, duly filed in the office of said recorder, and was recorded in book 41 of plats, pages 13 and 14 of the records of plats of said Cook county. The court finds that at the time of the making of said plat, and at the time of the making of said assessment, said lands were not in open, actual use by the said cemetery company for burial purposes or for the general use of the lot holders, nor subservient to said burial uses, so that they did not properly constitute grounds actually used by the corporation for burial purposes, or grounds for the general use of the lot holders, or subservient thereto, in the meaning of section 5 of the charter of said corporation, nor were they then used by said corporation for cemetery purposes, exclusively as a graveyard or grounds for the burial of the dead, or as subservient thereto, except that part of said lands designated in said plat as section 109. The court finds that said section was, in the spring of 1890, made up into grounds for burial lots, the first burial therein having taken place in June, 1890, and that there were subsequent burials in said section prior to the filing of this

bill. The said section, from the month of June, 1890, to the time of the filing of this bill, was used exclusively for a part of its graveyard and ground for the burial of the dead, and the court finds that said section 109 was not properly assessed for the taxes of 1891, and is exempt from the taxes of that year."

. The collection of the proportionate part of the tax upon this section was accordingly restrained, and the injunction dissolved as to the balance, thus holding about seventy-six acres of the tract subject to taxation. Only this latter part of the decree is called in question by this appeal.

The following, substantially the testimony of George H. Scott, called by the complainant, gives in detail the manner in which the grounds have been used prior to and since the platting. He says:

"I am a surveyor in the employ of said complainant, and have been in its employ since 1884. I live on the cemetery grounds now. I am familiar with its grounds and property, and was in 1890. Knew the condition of the grounds in April, 1890. We were making ground that year.

Q. "In April, 1890, and on the 30th of April, 1890, how many acres were included in complainant's burial grounds?

A. "About three hundred acres, and enclosed by a fence.

Q. "On the 30th of April, 1890, how many acres of land did the company own, if you know?

A. "About two hundred and seventy or two hundred and eighty acres. The cemetery grounds are in Lake View township, now in Chicago. * * * I know the eighty acres of land described in the bill. It adjoins the other grounds of the cemetery company. It is enclosed in one common enclosure with it. Nothing separates it from the rest of the ground of the company. It has been so enclosed since 1884. I repaired the fences in 1884. In 1886 I leveled and plowed nearly forty acres of this eighty-acre tract, and sowed it with grass seed, to grow sod for the use of the cemetery. In 1884 I put a

sewer through it, for the drainage of the cemetery generally. There was no other way by which we could drain the cemetery, with the exception of these twenty-three acres, or thereabouts (referring to the south-east corner of the grounds), than by way of through that eighty acres. The ground in the eighty acres is low, and it forms a general water-shed of the cemetery. We have greenhouses on it also, in which we raise flowers for cemetery purposes; also barns for housing the horses used for cemetery work, and two houses in which I and the gardner live. I made a survey of this eighty acres in 1889. The plat now shown me refers to the eighty acres alluded to, and is the one I made at that time.

Q. "On the 30th day of April, 1890, what use, if any, did the cemetery company make of the ground shown in this plat?

A. "In the fall of 1889 I began to make section 109, taking out the trees, and finished it the following spring. We grow sod on a part of this tract. The horses kept on this tract are used for general cemetery work exclusively. We grow plants there for cemetery purposes, for the decoration of graves, and the accommodation of patrons. I pay no rent for the house I live in, nor does the gardner. * * * The place marked on the plat 'lake,' is the lowest portion of the eighty acres. It is intended as a reservoir, that we may have some extensive pumping apparatus, and gather our water from that lake for the purpose of watering the cemetery, generally. There is no other way by which the water can drain from the cemetery except down this ridge.

Q. "Since the 30th of April, 1890, what use has been made of that eighty acres, or any part of it, other than for cemetery purposes?

A. "None.

Q. "Since the 30th of April, 1890, what use has been made of that ground by the cemetery company?

A. "We sold burial lots, and for the uses already described.

Q. "How many lots has the company sold?

A. "Pretty near the whole of this section 109 is sold.

Q. "How many bodies have been buried in this section 109, if you know?

A. "Up to date, over three hundred. ✳ ✳ ✳

Q. "How much ground, if any, did the cemetery company, on the 30th of April, 1890, own in this general enclosure, and outside of this eighty-acre tract?

A. "About one hundred and ninety acres.

Q. "How much of that one hundred and ninety acres was unsold, if you can state?

A. "About thirty acres, I should think. There are scattered lots not sold.

Q. "Do you know how much land is required by the cemetery company yearly for burial lots in its business?

A. "Yes, I do. About eight acres a year for burial purposes.

Q. "Is the requirement increasing?

A. "Yes, we have made onto eleven acres this year.

Q. "In your judgment, will the eleven acres be needed by the company for burial lots within a year?

A. "I think it will. I must have some more of such lots as soon as the condition will allow us to do it.

Q. "What other ground, if any, has the cemetery company now, or had it in April, 1890, that it could use for burial purposes?

A. "They have a little to the south-east of this now,—only about thirteen acres—twelve or thirteen acres.

Q. "How soon, in your judgment, will the needs of the company require this eighty acres for burial purposes?

A. "They want it right away. If I can have my way I shall make this section next spring. It will be required before next spring. It will be required as early as it can be made. The ways marked in here are driveways; the green spots are ornamental spots, and may be sold for single lots; that is in order to get the contour for the drives symmetrical.

It is a general plat, that shows the relation of this eighty acres to the cemetery proper.

Q. "Mr. Scott, were there any bodies buried on the land in controversy in this suit on April 30, 1890, or May 1, 1890?

A. "I think not, sir. We hadn't completed the work on that section 109 at that time. There were no bodies buried in any part of the eighty acres at that time.

Q. "And there have been no bodies buried since that time, except in section 109?

A. "That is true. The driveways indicated on the plat did not exist in April, 1890, nor do they now, except the main one down on the east side and the roadway leading out to Western avenue. It is not an improved macadamized road. The ornamental triangles do not exist, nor did they in 1890.

Q. "In other words, do you mean this is a plat as you propose to have it some time in the future?

A. "It is prospective.

Q. "This lake that is shown on this map, is there any such thing as a lake there at all?

A. "No, sir.

Q. "The eighty acres, with the exception of section 109, and some of that tract, practically is in the same condition, and has it been since May 1, 1890; is it in the same condition it was in prior years, since the company owned its ground?

A. "With the exception of the houses and buildings. The buildings have been there for many years.

Q. "You say you have greenhouses there?

A. "Yes, sir.

Q. "And you used that for cemetery purposes?

A. "Yes.

Q. "What do you do with those flowers?

A. "Plant them on graves.

Q. "You sell them to your patrons and get money for them?

A. "I think so.

Q. "You don't furnish these flowers to people free, do you?

A. "No, sir. The principal object we have in keeping it is to accommodate the patrons.

Q. "If anybody comes there who does not want flowers for a grave and wants a bouquet, they buy it there?

A. "No, they do not sell in that way.

Q. "Up to the present time you have not sold any lots in that part of that eighty-acre tract except in section 109?

A. "That is all."

It is contended by appellee that the court below had no jurisdiction to entertain the bill, because it failed to allege that the complainant had endeavored to avoid the tax sought to be enjoined, either before the municipal authorities or the county court, on application for judgment. We have expressly held otherwise in *Illinois Central Railroad Co.* v. *Hodges et al.* 113 Ill. 323. It is well settled in this State that the collection of a tax levied upon property not subject to taxation, will, on application of the owner, be enjoined. He has a right to assume that the exemption will be respected, and is not required to take notice of its illegal assessment and valuation, "nor to appear before the local tribunals in that regard." (Ibid.) He must, however, be prepared to maintain his claimed right of exemption by clear and satisfactory proof. (*In the matter of Swigert, Auditor,* 119 Ill. 83, and cases cited.) The claim here being that the property was exempt because of its use, the burthen was upon the complainant to satisfactorily show that it was appropriated to the use specified in the law under which the exemption is claimed. (*In the matter of Swigert, Auditor,* 123 Ill. 272, and cases cited.) So much of section 5, *supra,* as relates to exemption of lots sold, can of course have no application to this case.

The question then is, was the eighty acres (except section 109) "actually used by the corporation for burial purposes, or for the general use of lot holders, or subservient to burial uses," when the tax in question was levied. It is clear, from

complainant's own testimony, that it had not at that time sold any burial lots upon it, nor had it offered to do so. As we understand the testimony of Mr. Scott, and other witnesses testifying on behalf of the company, lots were not offered for sale or bodies buried on the grounds until after the sections were improved, hence only the one section could be said to be in actual use by the corporation for burial purposes. It is not claimed, nor could it be under the evidence, that it was appropriated to the "general use of lot holders," and so it only remains to be seen whether it was "subservient to burial uses," within the proper meaning of that language in section 5.

On this question we are unable to see how the case is distinguishable from *The People ex rel.* v. *Graceland Cemetery Co.* 86 Ill. 336. The section of the charter of the Graceland Cemetery Company exempting its property from taxation is an exact copy of section 5 of the charter of this company. The decision in that case is conclusive in this, to the effect that the mere purchase of the land in question for future use as burial grounds, and platting it, does not make it subservient to burial purposes, within the meaning of the charter. The language of section 5 is expressly so. It must have "been platted and recorded as cemetery grounds," and also actually used for burial purposes, or for the general use of lot holders, or subservient to burial purposes. It will be observed that the subserviency is not merely to cemetery uses, or for the general purposes of the company, but to "burial uses." This clearly means, "useful as an instrument to promote" interments of the dead—actual burials. If it be said this is a narrow view of the language, the answer is, the intention of the State to bind itself by an exemption of property from taxation must be clear, as all presumptions are against it. (Cooley on Taxation, 54.) The word "subservient" sometimes means, "useful in an inferior capacity, serving to promote some end." As here used it may properly be construed to mean, grounds not for actual burial purposes, viz., in which

to deposit bodies, but useful in connection with such grounds, —"serving to promote the end of burying the dead." "Subservient to burial uses," not subservient to sodding grounds, or ornamenting graves, or draining grounds, or feeding horses used in the cemetery; subservient, not to the general purposes of the cemetery, but to the one thing,—burial uses.

We do not wish to be understood as holding that cemetery grounds are only exempt from taxation when burials have been actually made upon them, or that the necessities of the corporation may not be reasonably anticipated by appropriating grounds to burial purposes before they are absolutely demanded, so as to bring them within the exemption. This, we think, is done by this company when it "makes up" sections, or, otherwise acting reasonably in good faith, actually devotes its grounds, as a body, to immediate use for burials. It can not, however, by platting a large body of land and appropriating a fraction of it to actual burial purposes, escape taxation of the whole. The decree of the Superior Court is in harmony with the views here expressed and the former decision of this court above referred to.

We have examined the cases cited by counsel for appellant as supporting a contrary view, and do not regard them in point. They are all cases arising upon an entirely different state of facts, and under laws in which the language used is essentially different from that of appellant's charter.

The decree will be affirmed.

*Decree affirmed.**

---

*SAME   ⎫
   v.    ⎬ *Appeal from the Superior Court of Cook County.*
SAME.  ⎭

Per CURIAM: For the reasons stated in the foregoing opinion the decree of the Superior Court will be affirmed in this case.

*Decree affirmed.*