(No. 24525.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE
ROSEHILL CEMETERY COMPANY, Appellee.

*Opinion filed June 15, 1939.*

ORR, J., dissenting.

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, and PHILIP H. TREACY, of counsel,) for appellant.

ASHCRAFT & ASHCRAFT, (CARROLL J. LORD, and RUFUS D. BEACH, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The sole question in this cause is whether the Rosehill Cemetery Company is, by the terms of its charter, exempt from a capital stock tax. The issue is presented by an appeal of the People from a judgment of the circuit court of Cook county for the defendant in an action of debt to recover the amount of such a tax assessed for the year 1933 in the sum of $3884.29.

Defendant was incorporated by a special act of the General Assembly approved February 11, 1859, with perpetual succession. There were twenty-three incorporators; eighteen of them constituted the first "Board of Consultation" and the other five were the first "Board of Managers," with "power to receive subscriptions for the purchase of property and the laying out and ornamentation of grounds for cemetery purposes, * * * and may issue certificates, representing the interests of the subscribers in the property held by the company and in the proceeds of burial lots * * * transferable only in such way as the managers for the time being may from time to time direct." The details of management of the enterprise are committed to the board of managers. Not more than 500 acres of land may be held by the corporation. The specific provision here involved reads: "All lots sold for burial purposes by the cemetery company * * * shall be free from taxation * * * and all estate, real or personal, held by the company, actually used by the corporation for burial purposes, or for the general uses of lot holders or subservient to burial uses and which shall have been platted and recorded

as cemetery grounds, shall be likewise exempt as above."
The charter also provides that no one person shall hold at
any one time more than four lots so exempted, and every
lot sold shall be for the purpose of sepulture only, and no
lot holder shall permit interment on a lot held by him for
a consideration. An amendment to the charter in 1863
provides for a permanent trust fund of $100,000 to be
raised by setting aside ten per cent of the purchase price
of lots sold, the income to be used in the preservation,
maintenance and ornamentation of the cemetery as a whole.
The amendment adopts the provisions of another special
act, requiring that a sufficient portion of the ground shall
be set apart and held sacred for the burial of the poor and
strangers.

Appellant contends the exemption provisions of the
charter are void because the constitution of 1848, then in
force (section 3 of article 9) provided for exempting from
taxation only the property of the State and counties, "and
such other property as the general assembly may deem
necessary for school, religious and charitable purposes."
The claim is that cemeteries are not within any of the
classifications mentioned and the following principles of
law are invoked to sustain it: The constitutional enumera-
tion of property which may be exempted from taxation is
a limitation of the power of the legislature to exempt any
other property. Nothing will be held to come within the
exemption which does not clearly appear to be so, and all
reasonable intendments will be indulged in favor of the
State. (*People* v. *Chicago Union Lime Co.* 361 Ill. 304;
*In re Swigert,* 119 id. 83; *People* v. *Bennett Medical Col-
lege,* 248 id. 608.) Appellee says those holdings are not
controlling in this case because of the contemporaneous ex-
position of the constitutional provision involved.

In 1853, the legislature granted a charter to the Oak
Woods Cemetery Association exempting all its property
from taxation, and in 1861 it granted a charter to the

Graceland Cemetery Company with exemptions identical to those in this case. From 1851 to 1861 several other cemeteries were granted charters with exemption provisions. Section 3 of the Revenue act of 1853 exempted all lands used as graveyards, or grounds for burying the dead. In *People* v. *Graceland Cemetery Co.* 86 Ill. 336, and *Rosehill Cemetery Co.* v. *Kern,* 147 id. 483, the identical tax exemption here involved was before this court, and in both cases it was assumed to be constitutional. The question in each of those cases was whether certain parcels of land held by the cemetery company were being employed within the terms of the exemption. The available records of the State Tax Commission and its predecessor, the State Board of Equalization, show that no capital stock assessment has ever been made against the Oak Woods Cemetery Association, the Graceland Cemetery Company or the defendant, from 1872 to 1932, inclusive, except one against the Graceland Cemetery Company in 1920, and the records do not indicate whether it was paid or resisted. We are advised of no proceeding where the power of the legislature to grant such exemptions under the constitution of 1848 has ever previously been challenged in the eighty years since the granting of defendant's charter.

Some courts have held that the business of a cemetery company is in the nature of a pious and charitable use. (*Hopkins* v. *Grimshaw,* 165 U. S. 342, 41 L. ed. 739; *Forest Hill Cemetery Co.* v. *Creath,* 127 Tenn. 686, 157 S. W. 412.) It may well be that the framers of the constitution of 1848 so considered it, and on that account deemed it unnecessary to specifically include it in the exemption clause. The legislature and the executive officers obviously took the view that the constitutional convention so concluded. While this court is not bound by contemporaneous, practical, legislative and executive construction, no matter how long continued, where there is no room for doubt in the meaning of a constitutional provision, a dif-

ferent law applies when the intent is not free from doubt. In such cases, under the maxim *"Contemporanea expositio est fortissima in lege"* the courts, in view of the great injury and injustice which would otherwise result, will generally not disturb the practical and settled construction of a constitutional provision by contemporaneous exposition of the legislative and executive branches of the government. (*Nye* v. *Foreman,* 215 Ill. 285; *People* v. *Loewenthal,* 93 id. 191; *People* v. *Stevenson,* 281 id. 17; *Citizens' Bank* v. *Parker,* 192 U. S. 73, 48 L. ed. 346.) The facts disclosed by this record call for the application of that doctrine and are controlling. This disposes of appellant's contention that the exemption was void under the constitution of 1848. It must be treated as valid.

Immediately upon the passage and approval of the act of February 11, 1859, defendant accepted the terms of the charter granted to it, and has thenceforth operated thereunder. Its charter constituted a contract, the terms of which cannot be restricted or impaired by subsequent legislation. (*Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191; *People* v. *Rosehill Cemetery Co.* 334 id. 555; *Rosehill Cemetery Co.* v. *City of Chicago,* 366 id. 207.) This has been the settled law on this subject ever since the case of *Dartmouth College* v. *Woodward,* 4 Wheat. 519. The adoption of the constitution of 1870 did not operate to take away any of its charter powers. (*Rosehill Cemetery Co.* v. *City of Chicago,* 352 Ill. 11.) Manifestly the exemption provisions of the charter are as much a part of the contract as any other provisions.

The question remaining to be determined is whether a capital stock assessment is within the terms of the charter exemptions. Neither the face value nor the number of certificates of interest authorized to be issued is specified in the charter and it makes no mention of capital stock. In 1898 the board of managers adopted a resolution providing for the surrender of outstanding certificates and the issue of new certificates in place thereof on the basis of five

shares for each share surrendered. At that time there were one thousand shares outstanding. The new certificates show the person named therein is entitled to the number of shares indicated, in the property held by the company and in the proceeds of the sale of burial lots, "each share being one undivided five-thousandth's part of all the estate of said company, subject to the provisions of the charter and by-laws of the corporation." Shortly thereafter a journal entry was made setting up an item of $500,000 as "Shareholders' a/c," which is still carried on the books. It was not set up and is not carried as a capital stock account. For the year 1933, the officers of the company filed a "Capital Stock Tax Return" on a printed blank furnished by the taxing officials, stating the amount of capital stock authorized and paid up as $500,000, divided into 5000 shares. It bears the explanation: "No Par Value. The shares of stock are simply certificates entitling each shareholder to one five-thousandth received from any lot sales." Capital stock is either of "par value" or "no par value." It is not claimed that defendant has stock with a par value. In our opinion the facts do not establish that the corporation has a capital stock of no par value. Capital stock of that kind was unknown to the law in this State prior to the year 1919, and therefore could not have been within the intent of the legislature when it granted defendant's charter in 1859. No authority is cited and we know of none which holds that mere certificates of interest in corporate property are shares of stock in the corporation. By what process the carrying of a stockholders' account on the books could convert the certificates held by them into capital stock is not suggested, and such a claim could not be maintained. The explanation in the capital stock tax return shows the character of the shares, and the return does not commit defendant to an admission that it has capital stock subject to taxation.

The book value of the corporate assets shown in the capital stock tax return is somewhat in excess of $11,000,000, with an earned surplus of more than $500,000. This in-

cludes lands and buildings for burial purposes, cemetery' perpetual care fund of $2,515,000, mausoleum perpetual care fund $306,000, general care fund $101,000, items of cash, accounts receivable, real estate loans, mortgages in process of foreclosure, mausoleum special reserve and restoration fund securities, accounts with officers and bonds. The mortgages in process of foreclosure represent defaulted securities from the perpetual care funds, replaced by other securities. These items and the bond item are held to replace future defaults in those funds and to pay income taxes. The general care fund is the $100,000 trust fund provided for by the charter amendment. The cemetery perpetual care fund is used for the perpetual care of lots. Accounts receivable represent the unpaid amount for lots, mausoleum space, burial and vault accounts. Almost $9,000,000 of assets consists of a purported increase in value of ground bought over its cost. That item can in no sense be called capital stock.

If the legislature had meant to exempt only lots sold for burial purposes, and other real estate held for that purpose, personal property would not have been included in the grant. By the express terms of the charter all the personal estate is exempt, not only when used for burial purposes, but also if employed for the general uses of lot holders, or subservient to burial uses. No one could seriously contend that the phrase "which shall have been platted and recorded as cemetery grounds" applies to anything but the real estate. There is a difference between "burial" and "burial purposes." Burial is restricted to the act of interment. The purpose of burial is not alone the interment, but includes the continuing care, preservation and ornamentation of the place of interment. This arises from the age-old sentiment of furnishing and preserving a last resting place for the remains of deceased loved ones. As we said in *Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191: "Burial places are indispensable. Convenient to

the city of the living, a depository of the dead must be established and maintained. * * * Among the most beneficent acts of government is that legislation which fosters such enterprises, and clothes an aggregate number of citizens with power to adorn and beautify grounds that shall receive the remains of our dead. The sentiments of our better natures, and the civilization of the age, demand that these sacred places shall be made attractive and beautiful by the employment of the highest skill in landscape culture, the erection of costly monumental structures and architectural adornings of elaborate design and workmanship." These things are plainly and indisputably connected with and a part of burial purposes. Every item of defendant's personal property mentioned is employed to that purpose, either directly for the general use of the lot holders, or subservient to burial uses.

Defendant was chartered and holds its franchise for the single purpose of conducting a cemetery for burial purposes. Whether it has made a profit and accumulated funds is wholly beside the mark. Nor does the fact that it has returned money to its shareholders in the form of dividends show that it is subject to a capital stock tax.

The circuit court correctly held that defendant is not subject to the tax assessed. The judgment is, accordingly, affirmed.

*Judgment affirmed.*

Mr. JUSTICE ORR, dissenting:

The Rosehill Cemetery Company was incorporated in 1859 by a special act of the General Assembly which granted it a perpetual right to operate and maintain a cemetery. The company was organized and is operated for the private profit of the owners of its "certificates of interest," and pays dividends on such certificates from time to time. Section 5 of the charter provides: "All lots sold for burial purposes by the cemetery company * * * and all estate, real and personal, held by the company, actually used by the corpora-

tion for burial purposes, or for the general uses of lot holders or subservient to burial uses and which shall have been platted and recorded as cemetery grounds, shall be likewise exempt as above."

It is a settled rule in this State that in determining whether property is included within a statutory tax exemption the act must be strictly construed. The burden of proof is upon the party claiming the exemption and all doubts must be resolved against the claim for exemption. (*People* v. *University of Illinois,* 357 Ill. 369.) In *Rosehill Cemetery Co.* v. *Kern,* 147 Ill. 483, where this court had before it the same charter provision, it was held that land owned by the cemetery, platted for burial purposes but not yet actually devoted to burial uses, was not exempt from taxation by section 5. We said that to bring the land within the meaning of the charter provision "it must have been * * * actually used for burial purposes, or for the general use of lot holders, or subservient to burial purposes * * * not subservient to sodding grounds, or ornamenting graves, or draining grounds, or feeding horses used in the cemetery; subservient, not to the general purposes of the cemetery, but to one thing,—burial uses." The opinion adopted in the present case in effect overrules this former opinion where the charter provisions of this same cemetery were expressly construed.

The cemetery company contends that its capital stock represents the total assets of the corporation, tangible and intangible, and, therefore, it is actually used for burial purposes within the exemption. It is true that the capital stock of Illinois corporations, for purposes of taxation, is the sum of the whole property of the corporation, from which the value of all tangible property is deducted to avoid double taxation. Essentially, the capital stock tax is a tax imposed upon all the intangible property of the corporation, including the value of the corporate franchise, (*Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602; *Ohio and Mississippi Rail-*

*road Co.* v. *Weber,* 96 id. 443;) and if all of such property belonging to the Rosehill Cemetery Company is used for the three purposes enumerated in section 5, its capital stock must be exempt from taxation. But not all of the intangible property of the Rosehill Cemetery Company is devoted to those purposes. For example, accounts receivable, valued, in 1932, at $142,246.12, are not actually used for burial purposes, or for the general uses of lot holders or subservient to burial uses. This item is an asset most of which will eventually find its way to the owners of the certificates of interest in the corporation in the form of dividends or as an addition to the earned surplus. Neither does the balance sheet item, "Mortgage foreclosure on real estate," fall within the exemption provision. It is a portion of the assets of the corporation made up of depreciated securities withdrawn from the "perpetual care fund" and replaced by sound securities from other property of the corporation. Should other investments in the "perpetual care fund" depreciate, restitution may be made out of the assets held in this real estate mortgage foreclosure fund. But until an investment in the perpetual care fund becomes worthless, the real estate mortgage assets belong to the owners of the corporation and are held for their benefit. These two items—accounts receivable and "mortgage foreclosure on real estate"—demonstrate that the capital stock of the cemetery company is not entirely composed of tax-exempt property.

The company further insists and the majority opinion holds that its capital stock cannot be taxed without taxing its franchise, and that section 5 exempts the franchise from taxation. This reasoning proceeds from a misconceived idea of what their franchise really is. Although the franchise permits operation of a cemetery for burial of the dead, the franchise itself is not actually used for burial purposes, or for the general uses of lot holders or subservient to burial uses. (*Rosehill Cemetery Co.* v. *Kern, supra.*) Instead, it is a grant of privilege to operate the business of

selling burial space for the benefit of the owners of "certificates of interest." By means of this franchise the company has earned profits, part of which have been paid to the owners of its certificates as dividends and the balance used to create an earned surplus of more than half a million dollars. It follows that the capital stock of the Rosehill Cemetery Company is not exempt from taxation by virtue of section 5 of its charter. Of course, any items of property which are specifically exempt by section 5 cannot be included in determining the taxable value of the corporation's capital stock, (*Delaware, Lackawanna and Western Railroad Co.* v. *Pennsylvania,* 198 U. S. 341,) but we do not understand the company contends that the capital stock tax levied by the commission in 1933 was erroneously determined.

A further effort was made to avoid the tax by stating that the Rosehill Cemetery Company has no capital stock within the meaning of the revenue laws of 1872 and the Tax Commission act of 1919. The only specific language to which we are referred is found in section 32 of the Revenue act of 1872, (Ill. Rev. Stat. 1937, chap. 120, par. 36,) which provides for the filing of a sworn report by the corporation setting forth "the amount of capital stock authorized" and "the amount of capital stock paid up." The cemetery company admitted by its capital stock tax returns for 1933 that it had $500,000 capital stock fully paid up, divided into 500 shares. The fact that it designated these corporate shares as of "no par value" makes no difference. The company points out that its charter does not authorize capital stock of any specified monetary value and concludes that the statute levying a tax upon the capital stock of corporations, (Ill. Rev. Stat. 1937, chap. 120, pars. 1, 3,) was not intended to be applied to it. I believe this conclusion is unwarranted. The charter authorizes issuance of five thousand "certificates of interest." Each certificate represents ownership of one five-thousand part

of the assets of the company and is similar to a share of no par stock. The company's balance sheet since 1899 has shown a paid-in capital of $500,000. Moreover, the capital stock tax is not a tax upon each share of authorized stock or upon the amount of paid-in capital; it is a tax measured by the aggregate property of the corporation with certain well-defined deductions and exemptions. (*Pacific Hotel Co.* v. *Lieb, supra.*) The fact that the charter did not contemplate issuance of capital stock of a specified monetary value does not permit the company to escape taxation of its property. Neither can it be properly said that because there was no provision for a capital stock tax until 1872, the legislature intended the Rosehill Cemetery Company, organized in 1859, to be exempt. On such a theory, any corporation organized prior to 1872 would not be subject to a capital stock assessment. Defendant's charter does not forever exempt from taxation the corporation's property held for any and all purposes—only that held for the purposes enumerated in section 5 is exempt. Any corporation is subject to subsequent legislation lawfully enacted, so long as the provisions of its charter are not thereby impaired. *Pennsylvania Railroad Co.* v. *Miller,* 132 U. S. 75.

The failure of the State Tax Commission to impose a capital stock tax for any of the sixty years preceding 1933 has not, as contended, established an administrative interpretation of the exemption clause which the courts will not disturb. An erroneous administrative interpretation of an unambiguous statute can never prevent its correct interpretation and application. (*Whittemore* v. *People,* 227 Ill. 453.) Omission or failure to tax cannot establish an exemption from taxation.

For these reasons I cannot agree with the views and conclusions of the adopted opinion.