(No. 36020.—

THE SPRING HILL CEMETERY OF DANVILLE, ILLINOIS, Appellee, *vs.* WILLIAM E. RYAN, County Collector, Appellant.

*Opinion filed December 1, 1960.*

JOHN R. DEAN, State's Attorney, of Danville, for appellant.

ACTON, BALDWIN, BOOKWALTER & MEYER, of Danville, (HARVEY H. ACTON, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, the county collector of Vermilion County, appeals directly from a decree of the circuit court for said county permanently enjoining him from collecting real estate taxes levied against certain property owned by plaintiff, The Spring Hill Cemetery Association of Danville, Illinois. The revenue is involved to give us jurisdiction and the issue presented is whether two tracts of land owned by plaintiff are exempt from taxation.

Plaintiff was organized as a nonprofit organization on April 28, 1864, under authority of a general law which, with effect from February 14, 1855, permitted the incorporation of cemetery associations. (Laws of 1855, p. 189.) By section 1 thereof, such associations were authorized to acquire land "not exceeding fifty acres" and were restricted in its use to the laying out of such land "into burial lots for a burial place for the dead with convenient aisles," and the erection of a "hearse house" thereon. By section 8 of the act, it was provided: "The property of the corporation, its ground, lots and appliances, shall be exempt from taxation and shall not be liable to sale on execution." Worthy of note at this point is the circumstance that although the constitution of 1848, then in force, did not in express terms permit exemption to be granted to cemetery property, this court held in *People* v. *Rosehill Cemetery Co.* 371 Ill. 510, that the action of the legislature in granting such an exemption was to be treated as valid.

In August, 1885, plaintiff adopted a resolution electing to receive and hold in perpetual trust "any money or property given, devised, or bequeathed to the association for the purpose of takeing [sic] care and butifying [sic] the lot of any person or persons," and it is undisputed that in

June, 1948, plaintiff was licensed by the Auditor of Public Accounts to accept "by gift, grant, contribution, payment, devise or bequest, or pursuant to contract, any sum of money, funds, securities or property of any kind, or the income or avails thereof, and to hold the same in trust in perpetuity for the care of its cemetery, or for the care of any lot * * * in its cemetery." See: Ill. Rev. Stat. 1947, chap. 21, pars. 64.3 64.7 and 64.8.

Shortly after its organization, plaintiff purchased approximately 54 acres of land lying south of Voorhees Street and, when this proceeding was commenced, such land had been almost completely used for burial purposes. In 1903, plaintiff purchased a half-acre tract adjoining the 54-acre tract and this land is presently used for a manager's residence. The half-acre tract is at issue here and shall hereafter be referred to as tract 1. Plaintiff's manager occupies the premises rent-free and, in this manner, the association saves on the amount of salary that would otherwise have to be paid and likewise has some one on the grounds at all times for service and supervisory purposes.

To provide against the day when the original acreage would be fully utilized for interment purposes, plaintiff, in September, 1929, purchased 45 acres of land lying to the immediate north of Voorhees Street. At present, this land has the cemetery office located on it, about one acre has been platted and is being used for burials and the balance, except for a 10-acre tract to which we shall refer as tract 2, is used, according to the testimony of plaintiff's manager, for dirt, deposit of dirt and other cemetery operations. Tract 2 was leased to the Northwestern Publishing Company on May 23, 1952, for a period of 20 years, and is presently occupied by the lessee which operates and maintains there a transmitter tower and a television station. Under the terms of the lease, plaintiff is paid a rental of $1 per year and is given weekly radio and television time free of charge which

is utilized to advertise and promote the sale of plaintiff's cemetery lots.

In 1958, the defendant-collector attempted to collect real-estate taxes levied for that year against tracts 1 and 2 in amounts of $850.40 and $548.58, respectively, whereupon plaintiff started this action for injunctive relief alleging the tracts are tax exempt.

Pertinent statutory background shows that in 1891 the legislature passed "An Act in relation to cemeteries," wherein it was provided: "* * * That all cemetery associations, or companies incorporated for cemetery purposes, by any general or special law of this State, may acquire by purchase, gift, or devise, and may hold, own and convey *for burial purposes only,* so much land as may be necessary, not exceeding 20 acres, for use as a cemetery or burial place for the dead." (Laws of 1891, p. 86; emphasis supplied.) Four years later, as an emergency measure, the same act was amended to delete the limitation of "not exceeding 20 acres," (Laws of 1895, p. 81,) and, as so amended, has remained in force and effect to the present date. (See: Ill. Rev. Stat. 1959, chap. 21, par. 29.) Both parties to this proceeding agree that the latter enactment served to authorize plaintiff to acquire and hold land in excess of the 50-acre limitation imposed by section 1 of the act of 1855, but they disagree on the question of whether such additional land enjoys the privilege of tax exemption.

In essence, defendant's first contention is that since the act of 1855, under which plaintiff was organized, shows a legislative intent of granting exemption to only 50 acres of land, the additional land acquired under authority of the amendment of 1895 cannot be exempt in the absence of concurrent or subsequent legislation specifically extending the privilege to such land. Plaintiff, insisting that such a construction would produce an absurd result, contends that the additional land, or more specifically tracts 1 and 2, is exempt by virtue of the act of 1855, or by virtue of

our decision in *Locust Grove Cemetery Ass'n* v. *Rose,* 16 Ill.2d 132.

As previously pointed out, section 8 of the act of 1855 granted exemption to cemetery associations organized under the provisions of the act in these terms: "The property of the corporation, its ground, lots and appliance shall be exempt from taxation \* \* \*." Looking to this language, and seeking to draw an analogy from *Northwestern University* v. *People ex rel. Miller,* 99 U.S. 309, 25 L. ed. 387 (reversing 80 Ill. 333,) and from *People ex rel. Gill* v. *Lake Forest University,* 367 Ill. 103, plaintiff argues that unless obligations of contract are to be impaired the exemption privilege granted by section 8 must be construed as extending to the after acquired property without regard to its use. We are of the opinion that the analogy is not well taken.

In the *Northwestern case,* the university was incorporated under a special law of 1851 and by an amendment to its charter in 1855 it was provided: "\* \* \* That all property, of whatever kind or description, belonging to or owned by said corporation, shall be forever free from taxation for any and all purposes." A subsequent statute of 1872, conforming to the newly adopted constitution of 1870, was construed by this court as limiting the exemption privilege to land or other property in immediate use for school purposes. (80 Ill. 333.) However, the Supreme Court of the United States reversed, the rationale of its decision being that the exemption provision of the charter was broad enough to include any and all property owned by the corporation, that the constitution of 1848 permitted the Illinois legislature to grant such an all-inclusive exemption, and that the exemption privilege granted constituted a contract which the State had no right to impair by the subsequent constitution or legislation thereunder. By force of the high court's decision, and under similar factual conditions, the charter provision in the *Lake Forest University case, viz..*

"That all property, of whatsoever kind or description, belonging or appertaining to the Lake Forest University, shall be and forever remain free and exempt from all taxation," (367 Ill. at 105) was given the same construction.

There are, however, controlling factual differences between the university cases and the one at hand. Here, the exemption privilege was not couched in the broad and all inclusive terms found in the university charters, but was limited to the ground and lots which cemetery associations were authorized to acquire for "a burial place for the dead with convenient aisles." Of even greater significance is that, by section 1 of the same act, cemetery associations were expressly limited to the acquisition of no more than 50 acres of land, a circumstance which has no parallel in the university cases. When the language employed in the act of 1855 is given its plain meaning, and the act is read in its entirety, as it must be, it appears beyond question that the privilege embodied in section 8 at the time plaintiff received its charter was intended to extend to, and was a contract for, the exemption of land, up to 50 acres, used for burial lots, convenient aisles and hearse house. By the amendatory act of 1895, lifting the acreage limitation, the legislature did not impair any obligation of contract, but in fact enlarged upon plaintiff's charter power and in effect granted a new charter with corresponding new contractual rights. (Cf. *People ex rel. Caton* v. *Ottawa Hydraulic Co.* 115 Ill. 281.) This being so, the land acquired by plaintiff in excess of 50 acres, under statutory authority given long after the original charter had been granted, cannot be said to have become exempt by any of the contractual provisions of such charter. At the same time, however, we do not agree with defendant that some new and specific legislation was required before the privilege of tax exemption could be said to extend to the additional land.

Defendant concedes that plaintiff was authorized to acquire land in excess of 50 acres by the amendatory act of

1895, previously referred to, and, under established principles of statutory construction, we believe that this concession is correct. Unlike defendant, however, it is our opinion that if the act as amended in 1895 is to be read *in pari materia* with the act of 1855 to arrive at plaintiff's authority to purchase such land, then the same acts must likewise be read together to ascertain the legislative intent with respect to the matter of tax exemption of the land. Statutes which relate to the same thing or to the same subject or object are *in pari materia,* and should be construed together as though they were one statute, even though enacted at different times. (*People ex rel. Nordstrom* v. *Chicago and North Western Railway Co.* 11 Ill.2d 99; *People* v. *Clampitt,* 362 Ill. 534; 34 I.L.P., Statutes, sec. 131.) When this rule is applied here to the 1855 and 1895 statutes, it is manifest that the land plaintiff was authorized to purchase in excess of the 50-acre limitation became a part of the association's "ground" to which the exemption privilege was granted, subject only to the condition that such additional land be used "for burial purposes only." Laws of 1895, p. 81; Ill. Rev. Stat. 1957, chap. 21, par. 29.

The next contention advanced by defendant to defeat the claim of exemption is that since land acquired under authority of the 1895 statute may be owned and held "for burial purposes only," tracts 1 and 2 are not within the exemption privilege because they are not being used as burial places for the dead. Such a contention is completely dispelled, however, by the decision of *People* v. *Rosehill Cemetery Co.* 371 Ill. 510, 516, where it is said: "There is a difference between 'burial' and 'burial purposes.' Burial is restricted to the act of interment. The purpose of burial is not alone the interment, but includes the continuing care, preservation and ornamentation of the place of interment." On the basis of this distinction, which was again recognizeed by this court in *Locust Grove Cemetery Ass'n* v. *Rose,* 16 Ill.2d 132, 138-140, the fact that there have been no actual

interments on tracts 1 and 2 is not conclusive on the question of their tax exemption.

No question is raised as to the constitutional power of the legislature to grant exemption to land used for "burial purposes," and in the light of what has been said in the *Locust Grove* and *Rosehill* cases we think there can be none, thus the narrow issue for determination becomes whether the uses plaintiff is making of tracts 1 and 2 are uses for "burial purposes" within the meaning of the exemption privilege granted.

No principle of taxation has a firmer foundation in our law than the one which requires that in determining whether property is included within the scope of an exemption, the statute must be strictly construed and all debatable questions resolved in favor of taxation. (*Illinois Central Railroad Co. v. Irvin,* 72 Ill. 452; *In the Matter of Swigert,* 119 Ill. 83; *In re Petition of Walker,* 200 Ill. 566; *Glen Oak Cemetery Co. v. Board of Appeals,* 358 Ill. 48; *People ex rel. Cannon v. Southern Illinois Hospital Corp.* 404 Ill. 66; *Association of American Medical Colleges v. Lorenz,* 17 Ill.2d 125.) Equally familiar is the rule that courts have no power to create exemption from taxation by judicial construction. (*City of Mattoon v. Graham,* 386 Ill. 180; *Oak Park Club v. Lindheimer,* 369 Ill. 462.) When these principles are applied here, and in spite of the fact that burial purposes extend to something more than the act of interment, it is our opinion that it was never intended by the legislature to grant the exemption privilege to lands being put to the uses for which tracts 1 and 2 are used in this case.

As to tract 1, which is used as the manager's residence, tax exemption has been denied in previous decisions under factual conditions and statutes which closely parallel those of the instant case. In *People ex rel. Huck v. Graceland Cemetery Co.* 86 Ill. 336, where the exemption privilege was granted to land "actually used by the corporation for burial purposes, or for the general uses of lot holders or

subservient to burial uses," it was held that the privilege did not extend to a 43-acre tract which, although adjoining the cemetery and having been platted for burial lots, was being used for buildings erected to house employees and horses of the cemetery company. Again, in *Bloomington Cemetery Ass'n v. People ex rel. Baldridge,* 170 Ill. 377, where the corporate object and exemption privilege closely resemble those in the instant case, a lot owned by the association adjacent to its cemetery and used for the residence of its custodian was denied exemption because such use was held too remote from the corporate purpose of laying out, inclosing and ornamenting a piece of ground to be used as a burial place. The same result has been reached where schools have sought exemption for residence properties occupied by employees or officials, (*People ex rel. Kelly v. Avery Coonley School,* 12 Ill.2d 113; *Knox College v. Board of Review,* 308 Ill. 160,) and where property owned by a church has been used as a residence by its minister. (*People ex rel. Pearsall v. Methodist Episcopal Church,* 315 Ill. 233; *People ex rel. Carson v. Muldoon,* 306 Ill. 234.) With regard to school and church properties, it is of interest to note that as a result of a comprehensive reconsideration of the exemption provisions of the Revenue Act, accomplished in 1959 by the 71st General Assembly, exemption has now been specifically extended to the "staff housing facilities" of schools, (Ill. Rev. Stat. 1959, chap. 120, par. 500.1,) and to "housing facilities provided for ministers." (Ill. Rev. Stat. 1959, chap. 120, par. 500.2.) As to cemeteries, however, no revision was made, so that the exemption privilege continues to read: "All lands used exclusively as graveyards or grounds for burying the dead." Ill. Rev. Stat. 1959, chap. 120, par. 500.3.

Similarily, it is our opinion that tract 2 is not being used for burial purposes within the scope of the privilege contemplated by the legislature. In *Rosehill Cemetery Co. v. Kern,* 147 Ill. 483, and again in *Glen Oak Cemetery Co.*

v. *Board of Appeals,* 358 Ill. 48, exemption was denied to land which, although platted for burial purposes, was not being presently used for burials but held for future use. Here, the plaintiff goes even further. Tract 2 has not been platted for burial lots and is presently leased to another for purposes completely alien to the interment of a body or the operation of a cemetery. If the rate at which the original 54-acre tract became filled is a criterion it may be as long as fifty years before such land is actually used for burials. Surely it was not the legislative intent that it should be tax exempt for so long a period while leased to another. Although plaintiff claims it receives benefits in the form of free advertising from the lease of such tract, it is the primary use of property, not its incidental uses, which fixes its status for taxing purposes. (*People ex rel. Kelly* v. *Avery Coonley School,* 12 Ill.2d 113.) Here tract 2 is being primarily used for purposes of a radio and television station, neither of which related to burial purposes, the use for which the exemption privilage was granted.

Nor does the decision in *Locust Grove Cemetery Ass'n* v. *Rose,* 16 Ill.2d 132, either require or permit us to find tracts 1 and 2 exempt as the plaintiff contends. In that case a testator devised 80 acres of farm land to the cemetery association for inclusion in its endowment fund or property and directed that the income therefrom could "only be used" for the benefit and maintenance of the cemetery. No part of the land was used for burial purposes, but it was rented and the income used as other income in the association's care and trust funds. When confronted with the question of whether such land was exempt from real-estate taxes we held in the affirmative after gathering the legislative intent from section 14 of the Cemetery Act of 1903, (Ill. Rev. Stat. 1957, chap. 21, par. 49,) section 2 of the act relating to perpetual trust funds, (Ill. Rev. Stat. 1957, chap 21, par. 64,) and section 6 of the Cemetery Care Act, (Ill. Rev. Stat. 1957, chap. 21, par. 64.6,) and after

concluding that, within the meaning of the constitution, the use of land to provide a cemetery association with perpetual care funds with which to operate itself and its cemetery was as much a "cemetery" purpose (see: Const. of 1870, sec. 3, art. IX,) as providing for interment itself.

Following the pattern of the *Locust Grove* decision, plaintiff urges that tracts 1 and 2 are exempt because the uses to which they are being put directly and indirectly benefit the association in such a manner as to provide it with more general care funds for the operation, maintenance and beautification of its cemetery. Stated differently, and as we view it, plaintiff's contention is that by virtue of such decision any property owned by a cemetery, regardless of its use, must be exempt if some direct or indirect benefit is derived by the cemetery. However, a judicial opinion, like a judgment, must be read as applicable only to the facts involved and is an authority only for what is actually decided. (*Lustfield* v. *Chicago Transit Authority*, 408 Ill. 404; *People ex rel. Schuler* v. *Chapman*, 370 Ill. 430; *White* v. *Seitz*, 342 Ill. 266.) When this rule is followed here, it is manifest that the *Locust Grove* decision is not authority for the broad and sweeping change in the exemption privilege of cemeteries which the plaintiff proposes.

In *Locust Grove,* the land in issue was devised to the cemetery in trust with the direction that the income be used for the benefit and maintenance of the cemetery, and section 2 of the act concerning perpetual trusts and section 6 of the Cemetery Care Act presented an uncontroverted basis for determining the legislative intent that both the trust property and the income therefrom should be free from taxation. The land in this case was purchased by the plaintiff; it is impressed with no trust and plaintiff may do with it whatever it pleases. More important, unless such land is used for burial purposes, there is no manifestation by the legislature that either the land or the income therefrom should enjoy the exemption privilege. Further, in *Locust*

*Grove,* the Cemetery Act of 1903 permitted the cemetery association to "hold and keep inviolate any such property for the uses of said cemetery association." (Ill. Rev. Stat. 1957, chap. 21, par. 39.) By way of contrast, the act of 1855, under which plaintiff is organized, provides only that land acquired by gift, grant or devise shall be laid out into lots with convenient aisles, (Laws of 1855, p. 189, sec. 1,) while the amendment of 1895, under authority of which tracts 1 and 2 were purchased, directs that plaintiff may "hold, own and convey for burial purposes only." (Laws of 1895, p. 81; Ill. Rev. Stat. 1957, chap. 21, par. 29.) These limitations do not admit a conclusion that the exemption privilege was intended to extend to any lands which might in some way benefit an association such as the plaintiff.

For the reasons stated, it is our opinion that the circuit court of Vermilion County was incorrect when it found tracts 1 and 2 were exempt from the taxes in question. Accordingly its decree granting injunctive relief is reversed.

*Decree reversed.*